**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

| | |
|---|---|
| TESLA HUBBARD, QMHP,<br><br>*Plaintiff,*<br><br>*v.*<br><br>NORTHEAST KINGDOM HUMAN SERVICES, INC.; and JOSH BURKE,<br><br>*Defendants.* | **Case No.: 2:26-cv-67** |

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES THE PLAINTIFF, Tesla Hubbard, QMHP, by and through counsel, the Law Firm of Barr, Sternberg, Moss, Silver & Munson, P.C., in a civil action against Defendants Northeast Kingdom Human Services, Inc. ("NKHS") and Josh Burke, and states as follows:

## NATURE OF ACTION

1. This is a civil action for damages arising from Defendants' unlawful retaliation against Plaintiff Tesla Hubbard, a Qualified Mental Health Professional, for reporting fraudulent Medicaid billing practices, with said retaliation violating the Federal False Claims Act, 31 U.S.C. § 3730(h), the Vermont False Claims Act, 32 V.S.A. § 638, and the Vermont Healthcare Whistleblower Protection Act, 21 V.S.A. ch. 5, subch. 10; and for sex discrimination and hostile work environment in violation of the Vermont Fair Employment Practices Act, 21 V.S.A. ch. 5, subch. 6, and Vermont common law.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

## JURISDICTION

2. This Court maintains original subject-matter jurisdiction, namely, federal question jurisdiction under 28 U.S.C. § 1331.

3. Plaintiff further invokes the supplemental jurisdiction of the Court to hear and decide the pleaded state law claims, which form part of the same case or controversy as the federal question, pursuant to 28 U.S.C. § 1367(a).

## VENUE

4. Venue is proper in the District of Vermont pursuant to 28 U.S.C. § 1391(b) because all defendants are residents of this State and District; and separately because a substantial part of the events or omissions giving rise to the claims pleaded herein occurred within this State and District.

## PARTIES

5. Plaintiff Tesla Hubbard, QMHP (hereafter "Plaintiff"), is a resident of the Town of St. Johnsbury, County of Caledonia, State of Vermont.

6. Defendant Northeast Kingdom Human Services, Inc. (hereafter "NKHS") is a Domestic Non-Profit Corporation actively registered with the Vermont Secretary of State and with a principal place of business located in the Town of Newport, County of Orleans, State of Vermont.

7. Defendant Josh Burke is an individual resident of the Town of Barnet, County of Caledonia, State of Vermont.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

## GENERAL ALLEGATIONS

8. Plaintiff is a Qualified Mental Health Professional (QMHP) with a Master of Science degree and nearly three years of experience at NKHS.

9. NKHS is a state-designated mental health agency (a/k/a "Designated Agency" or "DA") that provides mental health, substance use disorder, and developmental disability services to individuals across Caledonia, Essex, and Orleans Counties in Vermont's Northeast Kingdom.

10. Plaintiff was hired by NKHS as an Emergency Services Clinician and, on or about May 8, 2024, was promoted to Program Manager of NKHS's Front Porch Mental Health Urgent Care, a federally funded 24/7 mental health urgent care facility located at 235 Lakemont Road, Newport, Vermont.

11. As Program Manager, Plaintiff's responsibilities included clinical and administrative supervision of Front Porch staff, oversight of policies and procedures, quality assurance, coordination with the Vermont Department of Mental Health ("DMH") regarding contract compliance, and ensuring proper billing practices and documentation in accordance with state and federal regulations.

12. As Program Manager, Plaintiff supervised "Peer Support Specialists," who are non-clinical behavioral health workers who draw on their own lived experience with mental health, trauma, or substance use challenges to provide recovery-oriented, relationship-based support to individuals in crisis or seeking wellness.

13. Plaintiff reported directly to Defendant Josh Burke, LICSW, Director of

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

Emergency Services.

14. Plaintiff's employment with NKHS was terminated effective October 24, 2025, with a final employment date of December 12, 2025.

## EMERGENCY SERVICES AND THE "SINGLE CASE RATE"

15. Under Vermont's Medicaid payment structure for DAs, Emergency Services crisis assessments are reimbursed through a "single case rate," a payment methodology administered by DMH.

16. Under the single case rate, DAs such as NKHS receive one bundled payment per eligible client per month, regardless of the number of clinicians involved in a given encounter or the number of services provided during that period.

17. Given that the single case rate payment is bundled, rather than "fee-for-service," DAs cannot separately bill Medicaid for an individual crisis encounter at Front Porch while also billing that same episode of care as a Mobile Crisis response.

18. By contrast, Enhanced Community-Based Mobile Crisis services are reimbursed on a fee-for-service basis outside the single case rate; this fee-for-service rate is generally a substantially higher reimbursement than the bundled payment available under the single case rate for an equivalent crisis assessment.

## THE FRAUDULENT BILLING SCHEME

19. On February 18, 2025, during a scheduled monthly meeting between NKHS leadership and Vermont DMH representatives, DMH issued a clear directive to NKHS that Mobile Crisis services could not be billed at Front Porch.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

20. DMH explained that billing Mobile Crisis services at Front Porch would constitute "double dipping" because of how Mobile Crisis billing is bundled, and that Front Porch should utilize its own clinicians under a single case rate billing structure rather than billing Mobile Crisis responses at the urgent care facility.

21. Immediately following the February 18, 2025 DMH meeting, Plaintiff communicated this directive to Defendant Josh Burke and other Emergency Services leadership, advising that Mobile Crisis billing could not occur at Front Porch and that Emergency Services crisis assessments should instead be billed under the single case rate.

22. Following this directive, Plaintiff did not conduct or bill any Mobile Crisis responses at Front Porch, instead utilizing proper crisis assessment billing codes in compliance with DMH guidance.

23. Despite the explicit February 18, 2025 DMH prohibition, in late April 2025, Defendant Josh Burke verbally instructed staff that Mobile Crisis assessments would resume at Front Porch, stating that such billing would proceed based on NKHS's discretion rather than under state requirements.

24. On or about April 28, 2025, Defendant Josh Burke directed the resumption of prohibited Mobile Crisis billing at Front Porch, dismissing Plaintiff's objections by stating, "DAs do what they want."

25. In July 2025, at a managers meeting, Defendant Josh Burke announced a new directive that staff were to bill Mobile Crisis services provided in nursing homes and falsely document the service location as "home" rather than the actual nursing home location.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

26. Defendant Josh Burke stated at this meeting, "We are doing mobiles at nursing homes now, it's their home," and directed staff to list the encounter location as "home" in the electronic medical record system.

27. During this period, discussions among NKHS leadership increasingly centered on financial gain and the reimbursement value associated with Mobile Crisis encounters, with Defendant Josh Burke reporting that Mobile Crisis assessments generated significantly more income per encounter as compared to standard crisis case rates.

28. The fraudulent billing practices included: billing Mobile Crisis for walk-in crises that occurred at Front Porch facility rather than in the community; billing services for individuals who declined mobile response; billing individuals experiencing crisis inside the building rather than at community onset; and directing staff to bill all encounters as Mobile Crisis regardless of eligibility or regulatory criteria.

29. In total, approximately 59 services were improperly billed at the Mobile Crisis rate at Front Porch.

30. NKHS is required to pay back the State of Vermont for these improperly billed services.

## GENDER-BASED DISCRMIINATION

31. Throughout Plaintiff's employment, Defendant Josh Burke made repeated discriminatory statements about women in leadership positions.

32. Defendant Josh Burke stated to at least one colleague of Plaintiff that he "would never work under a woman" and would quit before doing so.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

33. Defendant Josh Burke told Plaintiff that staff "go around [Plaintiff] to him because he is a male and [she is] a woman," attributing workplace dynamics to gender rather than professional qualifications or role distinctions.

34. Defendant Josh Burke stated that "the team needed more men because there would be less 'drama,'" expressing a discriminatory belief that women create workplace problems.

35. Defendant Josh Burke referred to female colleagues, including Program Managers Lindsey Muzzy and Gillian MacDonald, as "bitches" in workplace communications.

**PROTECTED DISCLOSURES AND REPORTING BY PLAINTIFF**

36. Beginning in March 2025 and continuing through September 2025, Plaintiff repeatedly raised concerns with Defendant Josh Burke about the improper billing of Mobile Crisis services at Front Porch in violation of DMH guidance.

37. Defendant Josh Burke consistently dismissed and vetoed Plaintiff's concerns about billing compliance, asserting his authority as Director and stating that DAs such as NKHS could exercise discretion to override state directives.

38. On September 3, 2025, during a managers meeting, Plaintiff raised concerns that Peer Support Specialists were being directed to function outside their scope of practice by determining client risk levels without clinical consultation, which Plaintiff believed placed staff at ethical, legal, and professional risk.

39. During that September 3, 2025 meeting, Defendant Josh Burke characterized Plaintiff's feedback as "not collaborative" and "dismissive," and stated she was "not upholding

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

NKHS values."

40. On September 17, 2025, Plaintiff met with NKHS Human Resources and submitted a protected internal report outlining her concerns regarding billing violations, unsafe scope-of-practice directions for staff, Defendant Josh Burke's gender-based discriminatory comments, and escalating retaliation.

41. On September 23, 2025, a DMH representative contacted Plaintiff and inquired as to whether certain Mobile Crisis encounters had occurred at Front Porch.

42. As a result of the State's inquiry, Plaintiff notified and met with NKHS leadership internally about concerns regarding both Front Porch and nursing home billing practices.

43. On September 24, 2025, Defendant Josh Burke, in the presence of other NKHS leadership and Plaintiff, claimed he had spoken with DMH and that the billing was allowed, a statement later found to be inaccurate and inconsistent with DMH guidance.

44. Also on September 24, 2025, when Plaintiff internally raised concerns regarding nursing home billing, Defendant Josh Burke told her to "mind [her] scope."

45. Also on September 24, 2025, after the meeting described in Paragraph 36, Plaintiff communicated to the DMH representative that NKHS was engaging in the improper billing practices and confirmed with the representative that those practices were not approved by the State.

46. Upon information and belief, NKHS leadership was aware of Plaintiff's reporting to DMH described in the preceding paragraph.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

## RETALIATION AND PRETETUAL TERMINATION

47. On September 17, 2025, Defendant Josh Burke placed Plaintiff on a Performance Improvement Plan (PIP).

48. The PIP cited alleged performance issues from the September 3, 2025 meeting, describing Plaintiff as “not collaborative,” “abrasive,” and “non-validating.”

49. Before the September 17, 2025 PIP, Plaintiff had never received any form of corrective action plan, PIP, or formal disciplinary action during her nearly three years of employment with NKHS.

50. Plaintiff had never received a formal staff evaluation during her nearly three years of employment with NKHS.

51. Following the issuance of the PIP, Plaintiff was removed from communications and leadership responsibilities, experienced abrupt schedule changes, and was excluded from program planning activities.

52. In supervisions with Defendant Josh Burke following the PIP on September 24, 2025 and October 14, 2025, Plaintiff was told she was “receptive to feedback,” was “making progress,” and that “we don’t need to worry about the PIP.”

53. The PIP was scheduled to conclude on December 19, 2025.

54. On October 24, 2025, Defendant Josh Burke reversed course and informed Plaintiff that she was “not a good fit,” that her changes were “not sustainable,” and that her role would be terminated.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

55. On October 24, 2025, NKHS informed Plaintiff that part of the justification for her termination was that she had not followed the "chain of command" because she had contacted the State while Defendant Josh Burke was away.

56. On October 27, 2025, Plaintiff met with NKHS Executive Director Kelsey Stavseth, stated that she believed the termination was retaliatory, and again raised concerns about billing practices, scope of practice violations, and Defendant Josh Burke's discriminatory remarks.

57. Defendants had no non-pretextual justification for Plaintiff's termination.

58. On October 30, 2025, Plaintiff received an email from Executive Director Kelsey Stavseth stating that effective October 31, 2025, Plaintiff would be removed from the Program Manager position and could remain employed only as a Front Porch clinician through December 12, 2025.

59. The email cited feedback that Plaintiff was "making it difficult to run the program and other Emergency Services programs," referencing input from Defendant Josh Burke.

60. The conduct for which Plaintiff was allegedly disciplined, including raising compliance concerns and advocating for proper scope of practice, was consistent with her professional obligations and responsibilities as Program Manager and was necessary to ensure regulatory compliance and patient safety.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

## **COMPENSATORY DAMAGES**

61. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has

suffered economic damages including lost wages, lost employment benefits, and harm to her professional reputation and career prospects.

62. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer emotional distress, mental anguish, humiliation, and damage to her personal and professional well-being.

63. Plaintiff has incurred and will continue to incur other compensatory damages to be proven at trial.

## CAUSES OF ACTION
***(All Pleaded Jointly Against Both Defendants)***

### COUNT I OF VI: RETALIATION IN VIOLATION OF FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3730(h)

64. Plaintiff restates and realleges the above paragraphs.

65. At all times relevant to this Complaint, Plaintiff was an "employee, contractor, or agent" under the Federal False Claims Act, 31 U.S.C. § 3730(h).

66. Plaintiff engaged in protected conduct by reporting NKHS's submission of false claims to Medicare and Medicaid for Mobile Crisis services, which did not qualify for such billing under federal regulations.

67. Defendants knew that Plaintiff engaged in such protected conduct, as Plaintiff repeatedly raised concerns with Defendant Josh Burke from March 2025 through September 2025 regarding the improper billing practices, submitted a formal report to Human Resources

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

on September 17, 2025, and communicated with Vermont DMH representatives regarding billing compliance.

68. Defendants took adverse employment actions against Plaintiff, including but not limited to by placing her on a PIP on September 17, 2025, removing her from communications and leadership responsibilities, and terminating her employment effective October 24, 2025.

69. Plaintiff's protected conduct was a contributing factor in the adverse employment actions taken against her, as evidenced by the timing of the complaint of improper billing practices, the PIP, and her termination shortly thereafter, the shifting and pretextual explanations for termination, and Defendants' references to Plaintiff's compliance concerns as problematic.

70. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages including lost wages, lost employment benefits, emotional distress, mental anguish, damage to her professional reputation, and harm to her career prospects.

71. Pursuant to 31 U.S.C. § 3730(h), Plaintiff is entitled to all relief necessary to make her whole, including two times the amount of back pay, interest on back pay, compensation for special damages sustained as a result of the retaliation, litigation costs, and reasonable attorney's fees.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

**COUNT II OF VI: RETALIATION IN VIOLATION OF VERMONT FALSE CLAIMS ACT, 32 V.S.A. § 630 *et seq.***

72. Plaintiff restates and realleges the above paragraphs.

73. At all times relevant to this Complaint, Plaintiff was an "employee, contractor, or agent" as described under the Vermont False Claims Act, 32 V.S.A. § 638(a).

74. Plaintiff took lawful acts in furtherance of efforts to stop Defendants from knowingly making, using, or causing to be made or used false records or statements material to false or fraudulent claims when she repeatedly reported to Defendant Josh Burke, NKHS Human Resources, and the State of Vermont that NKHS was improperly billing Mobile Crisis services to Medicaid in violation of Vermont DMH directives.

75. Defendants discharged, demoted, threatened, harassed, and otherwise discriminated against Plaintiff in the terms and conditions of her employment because of the lawful acts she took in furtherance of efforts to stop violations of Vermont's False Claims Act.

76. Defendants' stated reasons for placing Plaintiff on a PIP and terminating her employment are pretextual, as evidenced, *inter alia*, by the lack of any prior disciplinary action during her nearly three years of employment, the timing of adverse actions immediately following her protected reports, and inconsistent explanations provided for her termination.

77. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer substantial damages.

78. Pursuant to 32 V.S.A. § 638(b), Plaintiff is entitled to all relief necessary to make her whole, including two times the amount of back pay, interest on back pay, compensation for any special damages sustained as a result of the discrimination, litigation costs, and reasonable attorney's fees.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

**COUNT III OF VI: RETALIATION IN VIOLATION OF VERMONT HEALTHCARE WHISTLEBLOWER PROTECTION ACT, 21 V.S.A. § 507**

79. Plaintiff restates and realleges the above paragraphs.

80. Plaintiff is an "employee" as defined by the Vermont Healthcare Whistleblower Protection Act, 21 V.S.A. § 507(2).

81. Defendants are "employers" as defined by the Vermont Healthcare Whistleblower Protection Act, 21 V.S.A. § 507(3).

82. Plaintiff reported in good faith to her NKHS supervisors, NKHS Human Resources, and the State of Vermont violations of statutes and regulations affecting healthcare, specifically the improper billing of Medicare and Medicaid claims for Mobile Crisis services that did not meet regulatory criteria, and the direction of Peer Support Specialists to perform clinical functions outside their authorized scope of practice.

83. Defendants retaliated against Plaintiff because of such reports by, *inter alia*, placing her on a PIP, removing her from professional responsibilities, and terminating her employment.

84. Plaintiff's reports and objections to the billing violations and scope of practice concerns were made in good faith based on her reasonable belief that such practices violated state and federal healthcare regulations.

85. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has suffered substantial damages including lost wages, lost employment benefits, emotional distress, and damage to her professional reputation.

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

86. Plaintiff is entitled to all relief available under Vermont law to remedy the retaliation she suffered, including back pay, compensatory damages, and such other relief as the Court deems appropriate.

**COUNT IV OF VI: SEX DISCRIMINATION IN VIOLATION OF VERMONT FAIR EMPLOYMENT PRACTICES ACT, 21 V.S.A. § 495**

87. Plaintiff restates and realleges the above paragraphs.

88. Plaintiff is a member of a protected class under 21 V.S.A. § 495, specifically as a woman.

89. Plaintiff was qualified for her position and was performing her duties satisfactorily, as evidenced by her promotion to Program Manager, her nearly three years of employment without any prior disciplinary action, and positive feedback received even during her PIP period.

90. Plaintiff was subjected to adverse employment actions including being placed on a PIP, being removed from communications and leadership responsibilities, and ultimately being terminated.

91. The adverse employment actions taken against Plaintiff were motivated in whole or in part by her sex, as evidenced by Defendant Josh Burke's repeated discriminatory statements that he "would never work under a woman," that staff "go around [her] to him because he is a male and [she is] a woman," that the "team needed more men because there would be less 'drama,'" and his reference to female colleagues including Plaintiff as "bitches."

92. Similarly situated male employees in comparable positions were treated more

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

favorably than Plaintiff and were not subjected to the same level of scrutiny, criticism, or adverse employment actions.

93. Defendant Josh Burke's gender-based comments and conduct created a hostile work environment that interfered with Plaintiff's ability to perform her professional duties and undermined her authority as Program Manager.

94. Defendants' discriminatory conduct was intentional and reflected a pattern of gender-based bias in employment decisions.

95. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered substantial damages including lost wages, lost employment benefits, emotional distress, mental anguish, humiliation, and damage to her professional reputation and career prospects.

## COUNT V OF VI: RETALIATION IN VIOLATION OF VERMONT FAIR EMPLOYMENT PRACTICES ACT, 21 V.S.A. § 495

96. Plaintiff restates and realleges the above paragraphs.

97. Plaintiff engaged in protected activity under 21 V.S.A. § 495 by opposing discriminatory practices, specifically by objecting directly to Defendant Josh Burke's gender-based discriminatory statements and conduct and by reporting to NKHS Human Resources concerns about gender discrimination and the hostile work environment created by such conduct.

98. Defendants took adverse employment actions against Plaintiff, including placing her on a PIP on September 17, 2025—the same day she made her formal report to NKHS

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

Human Resources—removing her from professional responsibilities, and terminating her employment.

99. There was a direct causal connection between Plaintiff's protected activity and the adverse employment actions, as demonstrated by the temporal proximity between her complaints and the adverse actions, the lack of any prior disciplinary history, and the pretextual nature of Defendants' stated reasons for the adverse actions.

100. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered substantial damages.

## COUNT VI OF VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (COMMON LAW)

101. Plaintiff restates and realleges the above paragraphs.

102. Plaintiff was terminated from her employment with NKHS, with a final employment date of December 12, 2025.

103. Plaintiff's termination violated clear and compelling public policy of the State of Vermont, including Vermont's policies against healthcare fraud and the submission of false claims to government healthcare programs, Vermont's policies protecting whistleblowers who report such fraud and violations of law, and Vermont's policies prohibiting sex discrimination in employment.

104. Plaintiff's termination was motivated by her protected conduct, specifically her repeated reports and objections regarding the improper billing of Mobile Crisis services to Medicaid in violation of state and federal regulations, her advocacy for proper scope of practice

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

for Peer Support Specialists, and her opposition to gender-based discriminatory statements and conduct in the workplace.

105. The public policies implicated by Plaintiff's termination are of substantial importance to the community and are clearly articulated in Vermont statutes, regulations, and common law, including the Vermont False Claims Act, Vermont healthcare whistleblower protections, and Vermont's Fair Employment Practices Act.

106. Defendants' conduct in terminating Plaintiff for engaging in activities protected by these clear public policies was willful, malicious, and undertaken with knowledge that such termination would harm Plaintiff and undermine important public policy interests.

107. As a direct and proximate result of Defendants' wrongful termination in violation of public policy, Plaintiff has suffered and continues to suffer substantial damages including lost wages, lost employment benefits, emotional distress, mental anguish, humiliation, damage to her professional reputation and career prospects, and other consequential damages.

108. Defendants' conduct was willful, wanton, and malicious, demonstrating a reckless indifference to Plaintiff's rights and the public policies at stake, and therefore punitive damages are appropriate to punish such conduct and deter similar conduct in the future.

**WHEREFORE**, Plaintiff Tesla Hubbard, QMHP, requests that this Honorable Court:

1. Enter Judgment for Plaintiff and against Defendants for double back pay, including all wages, benefits, bonuses, and other compensation she would have earned, together with interest on such back pay, as provided by the Federal False

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151

Claims Act, 31 U.S.C. § 3730(h), and the Vermont False Claims Act, 32 V.S.A. § 638;

2. Enter Judgment for Plaintiff and against Defendants for compensatory damages for economic and non-economic harm, including emotional distress, humiliation, damage to professional reputation, and other losses to be proven at trial;

3. Enter Judgment for Plaintiff and against Defendants for punitive damages under Vermont law to punish Defendants' willful, malicious, and egregious conduct;

4. Enter Judgment for Plaintiff and against Defendants for reasonable attorney's fees, costs, and litigation expenses, as provided by applicable statute;

5. Enter Judgment for Plaintiff and against Defendants for pre-judgment and post-judgment interest as provided by law; and

6. Grant such other and further relief as the Court deems just and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Bennington, Vermont
March 11th, 2026



Alexander M. Dean, Esq.
**BARR, STERNBERG, MOSS,**
**SILVER & MUNSON, P.C.**
507 Main Street
Bennington, Vermont 05201
Telephone: (802) 442-6341
Facsimile: (802) 442-1151
Email: adean@barrsternberg.com



David F. Silver, Esq.
**BARR, STERNBERG, MOSS,**
**SILVER & MUNSON, P.C.**
507 Main Street
Bennington, Vermont 05201
Telephone: (802) 442-6341
Facsimile: (802) 442-1151
Email: dsilver@barrsternberg.com

BarrSternberg
Moss Silver
& Munson, PC

507 Main Street
Bennington, VT 05201
p: 802-442-6341
f: 802-442-1151