UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tesla Hubbard, QMHP,

Plaintiff,

v.

Northeast Kingdom Human Services, Inc. and Josh Burke,

Defendants.

Civil Action No. 2:26-cv-67-kjd

**OPINION AND ORDER**
(Doc. 6)

Plaintiff Tesla Hubbard brings this action against her former employer, Northeast Kingdom Human Services, Inc. (NKHS), and her former supervisor, Josh Burke, for wrongful termination. Hubbard alleges that NKHS fired her for exposing the company's illegal Medicaid billing practices. She further alleges that her termination was driven by sex discrimination and retaliation for reporting a hostile work environment to NKHS Human Resources. Hubbard alleges a pattern of gender-based bias in NKHS's employment decisions and further asserts that Burke made several discriminatory statements about women in the workplace. She requests an award of double back pay, compensatory and punitive damages, and reasonable attorney fees and costs.

Defendant Burke has filed a Partial Motion to Dismiss the Complaint, arguing that the Complaint fails to state a viable basis for individual liability against him under Counts I, II, and III. (Doc. 6.) Specifically, Burke challenges the retaliation claims alleged under the federal and Vermont False Claims Acts (Counts I and II) and the Vermont Healthcare Whistleblower

Protection Act (Count III). For the reasons explained below, the Partial Motion to Dismiss is GRANTED, and the relevant claims are dismissed with prejudice.

**Factual and Procedural Background**

The Court derives the following facts from the Complaint and accepts them as true for purposes of deciding the Partial Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Hubbard was a qualified mental health professional employed by NKHS during the relevant period. NKHS is a mental health agency providing mental health, substance use disorder, and developmental disability services to individuals in Vermont's Northeast Kingdom. NKHS initially hired Hubbard as an emergency services clinician. In May 2024, she was promoted to program manager of NKHS's walk-in clinic—Front Porch Mental Health Urgent Care ("Front Porch")—a federally-funded 24/7 mental health urgent care facility in Newport, Vermont. (Doc. 1 at 3.) Hubbard reported directly to Burke, NKHS's director of emergency services. Her responsibilities included overseeing policies and procedures, quality assurance, coordinating with the Vermont Department of Mental Health (DMH) regarding contract compliance, and ensuring proper billing practices and documentation in accordance with state and federal regulations.

In February 2025, DMH issued a directive to NKHS advising that mobile crisis services, which are dispatched by mobile response teams wherever a person experiencing a mental health or substance use crisis is located, could not be billed at Front Porch because of "double dipping" concerns. (*Id.* at 5.) Hubbard informed Burke and other emergency services leadership of this directive. Commenting that state-designated agencies could "do what they want," Burke instructed NKHS staff that billing for mobile crisis assessments at Front Porch "would proceed

based on NKHS's discretion rather than under state requirements." (*Id.*) Further, in July 2025, Burke announced a new directive at a NKHS managers' meeting that staff should "bill [m]obile [c]risis services provided in nursing homes and falsely document the service location as 'home' rather than the actual nursing home location." (*Id.*)

From March through September 2025, Hubbard raised concerns with Burke about the alleged "fraudulent billing practices" at NKHS, including "billing Mobile Crisis for walk-in crises that occurred at Front Porch facility rather than in the community; billing services for individuals who declined mobile response; billing individuals experiencing crisis inside the building rather than at community onset; and directing staff to bill all encounters as Mobile Crisis regardless of eligibility or regulatory criteria." (*Id.* at 6.) According to Hubbard, "[i]n total, approximately 59 services were improperly billed at the Mobile Crisis rate at Front Porch." (*Id.*) Burke dismissed Hubbard's billing compliance concerns, characterizing her feedback as "not collaborative" and "dismissive," and commenting that she was "not upholding NKHS values." (*Id.* at 7–8.)

Around the same time, Burke made discriminatory statements about women in leadership positions at NKHS. He referred to female employees as "bitches" in workplace communications and stated that the team "needed more men because there would be less drama." (*Id.* at 7.) Burke also stated to a NKHS employee that he would quit before working under a woman, and he informed Hubbard that staff would "go around [her] to him because he is a male and [she is] a woman." (*Id.* at 6–7 (second alteration in original).)

On September 17, 2025, Hubbard complained to NKHS Human Resources about NKHS's billing violations and Burke's gender-based discriminatory comments. About a week later, Hubbard reported to DMH that NKHS was engaging in improper billing practices.

On the same date that Hubbard complained to Human Resources, Burke placed Hubbard on a Performance Improvement Plan (PIP). Hubbard had never before received any disciplinary action or been placed on a performance plan in her nearly three years of employment with NKHS. The PIP, which described Hubbard as "not collaborative," "abrasive," and "non-validating," caused "abrupt schedule changes" for Hubbard, and resulted in her removal from communications and leadership responsibilities, and exclusion from program planning activities. (*Id.* at 9.) Although the PIP was scheduled to conclude on December 19, 2025, Burke assured Hubbard in the weeks following its September issuance that she was "making progress" and that "[they] don't need to worry about the PIP." (*Id.*) Despite these assurances, Burke informed Hubbard on October 24, 2025 that she was "not a good fit" and that "her role [at NKHS] would be terminated." (*Id.*) NKHS informed Hubbard that part of the reason for her termination was that she "had not followed the 'chain of command' because she had contacted [DMH] while . . . Burke was away." (*Id.* at 10.)

On October 30, 2025, NKHS executive director Kelsey Stavseth informed Hubbard by email that Hubbard would be removed from the program manager position effective October 31, 2025, and could remain employed as a Front Porch clinician only through December 12, 2025.

Hubbard filed the Complaint in this case on March 11, 2026, alleging that Defendants: (1) unlawfully retaliated against her for reporting NKHS's fraudulent Medicaid billing practices, in violation of the federal False Claims Act (FCA), the Vermont False Claims Act (VFCA), the Vermont Healthcare Whistleblower Protection Act (VHWPA), and the Vermont Fair Employment Practices Act (VFEPA); (2) discriminated against her on the basis of her sex and subjected her to a hostile work environment in violation of the VFEPA; and (3) wrongfully terminated her contrary to Vermont public policy. (*Id.* at 11–18.) Hubbard seeks judgment

against Defendants for double back pay, plus interest; compensatory damages for emotional distress, humiliation, and damage to professional reputation; punitive damages; reasonable attorney fees, costs, and litigation expenses; pre- and post-judgment interest; and other relief as the Court deems just. (*Id.* at 18–19.)

## Analysis

### I. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support her claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns*, 493 F.3d at 98. However, the court need not credit the complaint's "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see Faber v. Metro.*

*Life Ins.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)). "Dismissal is appropriate when it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019) (omission in original) (internal quotation marks omitted).

Burke contends that Plaintiff's False Claims Act allegations are insufficiently particular under Federal Rule of Civil Procedure 9. Citing *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71 (2d Cir. 2017), Burke contends that Hubbard's "fraud claims and claims brought pursuant to the [federal] False Claims Act . . . and the Vermont False Claims Act" must satisfy the particularity requirement of Rule 9(b), which generally requires the Complaint to allege "the who, what, when, where, and how of the alleged fraud." (Doc. 6-1 at 2 (internal quotation marks omitted).) *Chorches* precludes this argument, however, holding that "[t]he particularity requirement of Rule 9(b) does not apply to retaliation claims under the FCA." 865 F.3d at 95; *see also United States v. Applied Memetics, LLC*, 758 F. Supp. 3d 281, 316 (D. Vt. 2024); *United States ex rel. Schwartz v. Document Reprocessors of New York, Inc.*, 692 F. Supp. 3d 71, 78 (W.D.N.Y. 2023) ("A plaintiff need not plead an FCA retaliation claim with particularity because no showing of fraud is required. Instead, such claims are reviewed under the plausibility standard of Rule 12(b)(6)." (citations and internal quotation marks omitted)); *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 433 (4th Cir. 2015) ("[To plead retaliation under the FCA,] allegations need pass only . . . Rule 8(a)'s relatively low notice-pleadings [requirement,] in contrast to Rule 9(b)'s specificity requirements[.]").

Plaintiff brings retaliation claims under the FCA and VFCA. Therefore, she is not required to plead those claims with any more particularity than Rule 8(a) requires.

## II. Count I: Federal False Claims Act (FCA)

Burke requests dismissal of the FCA claim because the statute's anti-retaliation provision, 31 U.S.C. § 3730(h), does not permit individual liability. (Doc. 6-1 at 3–4.) Hubbard "agrees that Count I should be dismissed . . . as to Mr. Burke," but contends that dismissal should be "without prejudice." (Doc. 11 at 3.)

The weight of authority supports the parties' positions that individual liability for retaliation is not available under the FCA.[1] The only remaining issue is whether dismissal of the FCA claim should be with or without prejudice. Hubbard argues that dismissal without prejudice

[1] *See, e.g.*, *United States ex rel. Schwartz v. Document Reprocessors of New York, Inc.*, 824 F. Supp. 3d 325, 330 (W.D.N.Y. 2026) ("Although the Second Circuit has yet to opine on the issue, the majority of district courts in this Circuit have held there is no individual liability under the FCA." (internal quotation marks omitted) (citing cases)); *United States ex rel. Taylor v. GMI USA Corp.*, 774 F. Supp. 3d 645, 675 (S.D.N.Y. 2025) ("[T]he law in this District is clear that no individual liability (without alter-ego status) exists for retaliation under the FCA."); *Parris v. New York City Hous. Auth.*, 364 F. Supp. 3d 284, 290 (S.D.N.Y. 2019) ("[C]ourts in this Circuit have repeatedly held that there is no individual liability for retaliation under [the federal and state False Claims Acts]." (second alteration in original) (internal quotation marks omitted)); *Diffley v. Bostwick*, 17-CV-1410 (ALC), 2017 WL 6948358, at *2 (S.D.N.Y. Dec. 6, 2017) ("[T]his Court joins the overwhelming majority of courts . . . [that] have held that the current version of § 3730(h) does not create a cause of action against supervisors sued in their individual capacities." (second alteration in original) (internal quotation marks omitted)); *Monsour v. New York State Off. for People with Developmental Disabilities*, No. 1:13–CV–0336 (TJM)(CFH), 2014 WL 975604, at *11 (N.D.N.Y. Mar. 12, 2014) ("Plaintiff's reliance on a 2009 amendment to § 3730(h) that deleted the word 'employer' from the statute for the proposition that individual liability now exists is misplaced. Courts in this Circuit have recognized that this amendment did not evidence Congress's intent to add individual liability for a violation of the retaliation provisions of the FCA."); *Aryai v. Forfeiture Support Associates*, 25 F. Supp. 3d 376, 387 (S.D.N.Y. 2012) (granting individual defendant's Rule 12(b)(6) motion to dismiss on grounds that federal FCA "does not provide a cause of action against individual defendants"); *Howell v. Town of Ball*, 827 F.3d 515, 530 (5th Cir. 2016) ("[I]t is clear that the [FCA's 2009 amendment] . . . account[s] for the broadening of the class of FCA plaintiffs to include 'contractors' and 'agents,' not to provide liability for individual, non-employer defendants."); *United States ex rel. Sargent v. McDonough*, No. 1:23-cv-00328-SDN, 2024 WL 5159170, at *1 n.1 (D. Me. Dec. 18, 2024), *aff'd sub nom. United States ex rel. Sargent v. Collins*, 165 F.4th 102 (1st Cir. 2026) ("The FCA does not authorize claims against individual supervisors for their role in FCA-related retaliation[.]" (collecting cases)); *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 748 (E.D. Va. 2016) ("[T]he overwhelming majority of courts, including the Fifth Circuit, have held that the current version of § 3730(h) does not create a cause of action against supervisors sued in their individual capacities." (footnote omitted)); *but see U.S. ex rel. Moore v. Cmty. Health Servs.*, Civil No. 3:09cv1127 (JBA), 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012) (noting that current version of FCA's retaliation provision "conspicuously omits the word 'employer,'" and therefore plaintiff's allegations "could give rise to a retaliation claim against individual defendants").

is appropriate because discovery "may trigger a colorable federal FCA claim to be reasserted individually against Mr. Burke on the basis of an alter-ego or veil-piercing theory." (*Id.* (citing *United States ex rel. Taylor v. GMI USA Corp*., 774 F. Supp. 3d 645 (S.D.N.Y. 2025)).) *Taylor* does not persuade the Court that dismissal of the FCA retaliation claim without prejudice is warranted. As Hubbard observes, *Taylor* acknowledged that the Second Circuit "has not weighed in on whether a § 3730(h) retaliation claim can be brought against an individual through veil-piercing or as the alter ego of an employer corporation." 774 F. Supp. 3d at 669 n.20.

As discussed above, a complaint's factual allegations must themselves "nudge[] [each] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The court may dismiss a claim without prejudice if the plaintiff demonstrates a good faith basis to cure the claim's deficiencies, but making that showing requires more than simply an assertion that discovery may provide a basis to substantiate the claim. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying request to replead where "problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it"). In other words, if the facts do not support a given claim at the time the complaint is filed, a dismissal without prejudice is not a mechanism for further fact development to support the deficient claim. *See Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 n.4 (S.D.N.Y. 2020) ("Discovery is not a fishing expedition for Plaintiffs to try to obtain information to try to create claims that do not already exist[;] Plaintiffs need to have adequate information in their possession at the time they file their complaint to substantiate the claim against a motion to dismiss." (citation modified)); *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 (S.D.N.Y. 2009) ("Discovery is unwarranted where it would function as a fishing expedition for evidence in search of a theory that has yet to be asserted. Indeed, allowing the plaintiff to conduct discovery in order to piece together a claim

would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to streamline[ ] litigation by dispensing with needless discovery and factfinding where the plaintiff has failed to state a claim under the law." (alteration in original) (citations and internal quotation marks omitted)).

Although Hubbard raises the issue in her brief, the Complaint does not plead facts alleging that Burke functioned as the alter ego of NKHS. *See, e.g.*, *Concepts NREC, LLC v. Qiu*, 662 F. Supp. 3d 496, 511 (D. Vt. 2023) (listing factors courts consider to "assess whether an entity functions as an alter ego of another entity"), *objections overruled*, 698 F. Supp. 3d 698 (2023). For example, Hubbard does not allege that Burke commingled his personal funds with NKHS corporate funds, that there was an absence of arm's-length dealing between Burke and NKHS, or that the lines of corporate control were blurred. *See id.* at 511–12 (finding companies were "alter egos of one another" where evidence revealed "companies' disregard of corporate formalities; overlap in ownership, officers, directors, and personnel; common office space; degree of business discretion; and lack of arm's-length dealings"); *Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, 632 F. Supp. 3d 562, 569 (S.D.N.Y. 2022) ("Factors weighing in favor of finding that entities are alter egos include overlap in staff, officers, and directors, absence of arms-length dealing, blurred lines of corporate control, and intermingled financial transactions." (citing *William Passalacqua Builders, Inc. v. Resnick Devs., Inc.*, 933 F.2d 131, 139–40 (2d Cir. 1991))); *Connecticut Gen. Life Ins. Co. v. Ogbebor*, No. 3:21-cv-00954 (JAM), 2022 WL 4077988, at *6 (D. Conn. Sept. 6, 2022) ("Evidence relevant to showing that a company is an alter ego includes (1) the payment of alleged corporate debts with personal checks or other commingling of funds, (2) representations that the individual will financially back the corporation, (3) the diversion of company profits to the individual for the individual's personal

use, (4) inadequate capitalization, and (5) any other failure to keep corporate and personal assets separate.”).

The Complaint alleges only that Burke was an individual acting as director of emergency services at NKHS during the relevant period, and that Burke was Hubbard’s supervisor. (Doc. 1 at 3–4.) The Complaint further alleges that NKHS, not Burke, hired Hubbard. (*Id.* at 3.) The Complaint does not allege that Burke was Hubbard’s employer, or that Burke had any ownership interest in NKHS. Further, a reasonable reading of the Complaint suggests that Burke was required to report to NKHS executive leadership, and that executive director Kelsey Stavseth, not Burke, ultimately decided that Hubbard would no longer remain employed with NKHS. (*Id.* at 8–10.)

Accordingly, Count I of the Complaint is dismissed with prejudice as to Defendant Burke.

## III. Count II: Vermont False Claims Act (VFCA)

Burke contends that Plaintiff’s VFCA retaliation claim should be dismissed as a matter of law because the VFCA also does not permit liability of individual employers acting in a supervisory capacity. (Doc. 6-1 at 5.)

Plaintiff responds that “[u]nlike its federal analogue, the Vermont False Claims Act likely permits anti-retaliation actions against individual defendants.” (Doc. 11 at 4.) Plaintiff cites *Payne v. U.S. Airways, Inc.*, 2009 VT 90 (2009), a case in which the Vermont Supreme Court reversed a grant of summary judgment to an individual supervisor sued under VFEPA. (*Id.*) *Payne* pre-dates the enactment of the VFCA and does not address individual liability for retaliation under the VFCA. In Plaintiff’s view, however, *Payne*’s interpretation of VFEPA to permit liability of individual defendants—notwithstanding the federal courts’ interpretation of

the analogous Title VII statute to disallow individual liability—provides a basis to conclude that the VFCA has broader application than the federal FCA. (*Id* at 5–7.) Therefore, Plaintiff urges the Court to avoid "a construction of the VFCA that insulates individual wrongdoers from personal liability—even when those individuals were directly responsible for the retaliation," as such an interpretation "would substantially undermine the statute's whistleblower-protection purpose." (*Id*. at 6–7.)

The express language of the VFCA, however, does not permit the more expansive interpretation Plaintiff advocates. The VFCA explicitly directs Vermont courts to interpret its provisions consistent with the FCA. "It is the intent of the General Assembly that in construing this chapter, the courts of this State will be guided by the construction of similar terms contained in the Federal False Claims Act." 32 V.S.A. § 641(b). Consequently, courts in this District apply federal FCA caselaw to their interpretation of the VFCA. *See, e.g.*, *Zazzali v. VitalCore Health Strategies, LLC*, Civil Action No. 2:24-cv-1015-kjd, 2025 WL 1836968, at *3 (D. Vt. July 3, 2025) ("Because courts construing the VFCA should be guided by the construction of similar terms contained in the [f]ederal [FCA], the Court looks to federal decisions construing the FCA to guide its interpretation of the VFCA." (second alteration in original) (citation and internal quotation marks omitted)); *United States v. Applied Memetics, LLC*, 758 F. Supp. 3d 281, 317 (D. Vt. 2024) (applying federal FCA framework to VFCA retaliation claims). As explained in Part II above, given that federal courts do not recognize individual liability claims for retaliation under the FCA, a similar construction applies to the VFCA.

The remedies available under the FCA and the VFCA further suggests that the VFCA does not authorize individual-liability retaliation claims. Among available remedies, the retaliation provision of both the federal and state statutes include "reinstatement with the same

seniority status" that the plaintiff enjoyed before her employer's retaliatory action. 32 V.S.A. § 638(b); 31 U.S.C. § 3730(h)(2). Under a plain reading of the statute, an individual supervisor such as Burke does not occupy a position that legally authorizes reinstatement of a terminated employee to the same seniority status the employee enjoyed with an institutional employer such as NKHS. In other words, an individual-liability claim, if successful, would not have a corresponding reinstatement remedy. This incongruity between right and remedy further counsels against an interpretation of the VFCA that permits individual liability.[2]

Count II of the Complaint is dismissed with prejudice as to Defendant Burke.

## IV. Count III: Vermont Healthcare Whistleblower Protection Act (VHWPA)

Burke contends that Count III of the Complaint should be dismissed as to him because the VHWPA limits liability exclusively to employers. Hubbard concedes that the VHWPA "likely limits claims to 'employers' as defendants," but again argues that the claim should be dismissed against Burke "without prejudice" because "no discovery has taken place." (Doc. 11 at 9.) Hubbard contends that "[t]o the extent that there exists factual doubt about whether NKHS itself falls within the statutory definition of 'employer' under the VH[]WPA, that doubt should be resolved in discovery, not based on a weighing of likelihoods as set forth in the Complaint." (*Id.* at 10.)

Hubbard is correct that the VHWPA limits claims to "employers" as defendants. The retaliation provision of the VHWPA provides that "[n]o *employer* shall take retaliatory action against any employee" for disclosing or threatening to disclose any activity of the employer that

[2] The Court recognizes that Plaintiff's demand for relief does not include reinstatement to her previous position at NKHS. (*See* Doc. 1 at 18–19.) But that omission does not affect the Court's conclusion that the legally available remedies inform the permissible interpretation of the retaliation provision of the VFCA. Liability and available remedies are analytically distinct. Therefore, a plaintiff's choice to forego a demand for reinstatement does not legally render an individual supervisor an "employer" for purposes of a claim under the VFCA's retaliation provision.

the employee reasonably believes is a violation of the law. 21 V.S.A. § 507(b) (emphasis added). The VHWPA defines "[e]mployer" to include only "a hospital as defined in 18 V.S.A. § 1902(1)," or a "nursing home as defined in 33 V.S.A. § 7102(7)." 21 V.S.A. § 507(a)(3). The allegations in the Complaint do not place Burke within the definition of an "employer" under the VHWPA.

Count III of the Complaint is dismissed with prejudice as to Defendant Burke.

## **Conclusion**

For these reasons, the Court GRANTS the Partial Motion to Dismiss (Doc. 6) and DISMISSES Counts I, II, and III of the Complaint against Defendant Josh Burke with prejudice.

Dated at Burlington, in the District of Vermont, this 25th day of November 2026.

*/s/ Kevin J. Doyle*
United States Magistrate Judge